MELISSA HOLYOAK, United States Attorney (#9832)
TODD C. BOUTON, Assistant United States Attorney (#17800)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)524-5682
Email: todd.bouton@usdoj.gov

FILED
2026 SEP 17
CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAMON MATAI SEEI,<br><br>Defendant. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br>Case No. 2:26-cr-00361 TS<br><br>District Judge Ted M. Stewart<br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

This case involves a former postman who unlawfully threw away mail—including about 300 mail-in ballots that he was entrusted to deliver to registered voters in Utah.

On June 3, 2026, Damon Matai Seei (SEEI) was working for the United States Post Office as a letter carrier. That day, SEEI was entrusted with delivering mail to at least 300 persons residing in the Eagle Mountain, Utah area. Among the mail SEEI was entrusted to deliver were advertisements and hundreds of mail-in ballots. These mail-in ballots were sent to Eagle Mountain residents to allow them to vote in a June 23, 2026 primary election.

But on June 3, 2026, SEEI threw away some of the mail, which he had been entrusted to deliver, into a dumpster in a church parking lot. (*See* Exhibits 1-2). He later admitted in an interview that he threw away the mail because he wanted to "lighten his workload" so he could presumably go home earlier. The mail that SEEI threw away into

the dumpster included advertisements and about 300 mail-in ballots that he was entrusted to deliver to Eagle Mountain voters. Because of SEEI's actions, those voters never received these ballots, and some of these voters were not able to vote in the election.

The United States is charging Mr. Seei with a single count under 18 U.S.C. § 1703(a) for Secretion, Destruction, and Delay of Mail.

☒ **The United States is not seeking detention. But it is seeking conditions of release.** The United States contends that the defendant (Mr. Seei) should be released on the following conditions:

- He not commit any other Federal, State, or local crime (18 U.S.C. § 3142(c)(1)(A));
- He be required to report to an assigned pretrial officer (18 U.S.C. § 3142(c)(1)(b)(vi));
- He be required to maintain employment, or, if unemployed, actively seek employment (18 U.S.C. § 3142(c)(1)(b)(ii));
- He be required to surrender his passport, if any (18 U.S.C. § 3142 (c)(1)(b)(xiv)); and
- He not interfere with any other delivery of mail, including, especially, the delivery of mail-in ballots. (18 U.S.C. § 3142(c)(1)(b)(xiv)).

☒ Based on the defendant's record and history, release on personal recognizance pursuant to 18 U.S.C. § 3142(b) will not reasonably assure the defendant's appearance and will endanger the safety of the community. **Therefore, the United States requests a hearing on pretrial release conditions pursuant to 18 U.S.C. § 3142(c).**

☐ Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast-track program, which includes agreeing to detention for the pendency of this case.

☐ The United States moves for detention based on current information.

The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence. The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention. The United States' motion for detention is:

☐ Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

- ☐ **(A**) a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
- ☐ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**
- ☐ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
- ☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
- ☐ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

**OR**

☐ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

- ☐ **(A)** a serious risk the defendant will flee; **or**
- ☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

## Procedure

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

## **Rebuttable Presumption**

☐ A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption. The United States acknowledges that it retains the burden of persuasion. The statutory presumption applies:

☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

**(A)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; ***and***

**(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; ***and***

**(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

☐ Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

## Factors to Be Considered

**The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting *the proposed conditions of release* for the defendant including, but not limited to:**

☒ **The nature and circumstances of the offense charged,** including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).

On June 3, 2026, Damon Matai Seei (SEEI) was working for the United States Post Office as a postman or letter carrier. On that day, he covered another colleague's mail route. That day, in his role as a postman, SEEI was entrusted with delivering mail to at least 300 persons residing in the Eagle Mountain, Utah area.[1] Among the mail SEEI was entrusted to deliver were advertisements and hundreds of mail-in ballots. The mail-in ballots were sent to Eagle Mountain residents to allow them to vote in a June 23, 2026 primary election.

But on June 3, 2026, SEEI threw away some of the mail that he had been entrusted to deliver into a dumpster in a church parking lot. (*See* Exhibits 1-2).[2] He later admitted in an interview that he threw away the mail because he wanted to "lighten his workload," presumably so he could go home earlier without delivering all the mail on his route. The mail that SEEI threw away into the dumpster included advertisements and the approximately 300 mail-in ballots that he was entrusted to deliver to Eagle Mountain voters that day so they could vote by mail in the June 23, 2026 primary election.

After SEEI threw away the mail-in ballots, several Eagle Mountain-area voters complained to the Utah County Clerk, Aaron Davidson, that they never received their mail-in ballots. Mr. Davidson investigated the matter. Using County Clerk databases, he determined that the rate of voter participation was remarkably low in the area where residents had complained that they had not received their mail-in ballots. This was Utah (State) House District 50 (District 50). After consulting with a Utah County attorney, Mr. Davidson emailed registered voters in District 50 and asked them if they had received their ballots. Several registered voters from that district informed him that they never received their mail-in ballots—even though many of them had email confirmations from the US Post Office indicating that their mail-in ballots were scheduled to be delivered to them on June 3, 2026. These mail-in ballots never came.

---

[1] See image of sample mail-in ballot attached as Exhibit 1.

[2] Exhibit 2 includes photos of the dumpster area and the dumpster in the church parking lot.

Based on responses and some telephone calls from registered voters in District 50, Mr. Davidson ultimately calculated that about 304 of the registered voters in the area never received their mail-in ballots.

Postal Service records confirmed that on June 3, 2026, SEEI covered the Eagle Mountain mail route where the missing mail-in ballots were supposed to be delivered. This was a Wednesday. SEEI reported for work at the Post Office at 9:13am. He started his route at 10:34am. Then, in about 1.5 hours, at around 11:57am that day, SEEI drove his mail truck to a local church parking lot and parked next to a dumpster for about 3 minutes. This was not a stop on his route. SEEI later admitted he parked by the dumpster to discard mail into it. About three hours later, at 3:00pm, SEEI returned to the Post Office and clocked out about 3:15pm. That day, he worked a total of just over 6 hours.[3]

When interviewed, SEEI admitted that he knew he was not allowed to discard mail, open mail, or take items from the mail. But in a written statement, he stated that he felt "overwhelmed" that day by the amount of mail he had to deliver, because the workload was "heavier" than usual, and that he decided to "get rid of advertisement mail" so he could focus on delivering everything else. He claimed that he did not intend to throw away the mail-in ballots. He claimed not to be a "very political person." He claimed not to have a "political agenda" and that he did not intend to "disrupt any political process" by discarding the mail. He claims he simply made a "poor decision" out of "frustration" and "laziness."

However, when interviewed by law enforcement, SEEI admitted that he had set the mail-in ballots aside at the beginning of his shift, and there is no record of his having delivered any of the ballots. He also threw the ballots away within about 1.5 hours of starting his route. So, the evidence does not suggest that SEEI made any effort at all to deliver the approximately 300 mail-in ballots. Nor does it seem plausible that he could not have noticed them—even if he mixed them in with advertisements at some point.

SEEI was also required to deliver the advertisements or marketing mail to the mail recipients. He knew that he was not authorized to discard the advertisements either.

☒ **The weight of evidence against the defendant.** (18 U.S.C. § 3142(g)(2)).
See above.

☒ **The history and characteristics of the defendant** including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings. (18 U.S.C. § 3142(g)(3)(A)).

[3] Records show that he worked about 6 hours and 3 minutes that day.

Mr. Seei has no identified criminal history. But absent conditions of release, he would remain a danger to the public and to the integrity of the electoral system. He no longer works for the United States Post Office. And he claims not to have a political agenda. But Mr. Seei threw away over 300 mail-in ballots that he was entrusted to deliver to registered voters. This unusual conduct creates a danger that, absent appropriate conditions of release, Mr. Seei might try to interfere with the delivery of mail-in ballots in some other way.

Given that a national election will take place on November 3, 2026—less than seven weeks from now—the Court should impose conditions of release to prevent Mr. Seei from interfering with the delivery of any more mail-in ballots.

☐ Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. (18 U.S.C. § 3142(g)(3)(B)).

☒ **The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release.** (18 U.S.C. § 3142(g)(4)).

Releasing Mr. Seei without appropriate, albeit limited, conditions of release would impose an unnecessary danger to the public and to the integrity of the coming election. Because Mr. Seei threw away about 300 mail-in ballots, it is necessary to impose conditions that would ensure that he not interfere in the upcoming election. The conditions requested by the United States are no greater than necessary to mitigate this danger.

☐ The defendant's lack of legal status in the United States. The defendant's legal status is:

☐ How the defendant would be subject to removal or deportation after serving a period of incarceration.

☐ The defendant's significant family or other ties outside of the United States.

☐ The defendant's use of aliases or false documents.

☐ The defendant's prior attempts to evade law enforcement.

☐ How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☐ The defendant's prior failures to appear for court proceedings.

☐ Other reasons including:

/ / /

/ / /

## Victim Notification

☐ The United States has notified any identified victim, or attempted to do so, pursuant to 18 U.S.C. § 3771.

The position of the victim(s) on the detention of the defendant is: unclear

☐ The victim(s) in this matter seek(s) a no contact order.

☐ This matter does not involve a victim requiring notification.

**Victim Notification Pending.** The United states has not yet been able to notify the approximately 300 victims whose mail-in ballots were not delivered to them after Mr. Seei threw away the ballots. However, the United States is compiling the victims' contact information and will provide these victims with notifications going forward through the United States Attorney's Office's Victim Witness Coordinator.

DATED this 17th day of September, 2026.

MELISSA HOLYOAK
United States Attorney

/s/Todd C. Bouton

TODD C. BOUTON
Assistant United States Attorney